**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ : | |
| WILLIE WILLIAMS,                    : | |
|                                    : | Civ. A. No. 09-6192 (NLH)(AMD) |
|               Plaintiff,    : | |
|                                    : | |
|          v.                        : | |
|                                    : | **OPINION** |
| CITY OF NORTHFIELD and             : | |
| OFFICER MICHAEL BUCCAFURNI,         : | |
|                                    : | |
|               Defendants.    : | |
| _____ : | |

**<u>APPEARANCES</u>:**

Willie Williams
409 Westminister Place
Atlantic City, NJ 08401

     *Plaintiff <u>Pro</u> <u>Se</u>*

A. Michael Barker, Esq.
Barker, Scott & Gelfand
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

     *Attorneys for Defendants*

**<u>HILLMAN, District Judge</u>:**

    This matter has come before the Court on Defendants' motion for summary judgment on Plaintiff's claims alleging false arrest in violation of the Fourth Amendment of the United States Constitution.  For the reasons expressed below, Defendants' motion will be granted.

## I.    INTRODUCTION

This is an action filed by Plaintiff, Willie Williams, also known as Willie Sabb, alleging civil rights violations under 42 U.S.C. § 1983 arising from his arrest on August 11, 2009.  The defendants are the City of Northfield and Officer Michael Buccafurni.  As set forth in greater detail below, the gravamen of this matter is whether a valid arrest warrant existed at the time of Plaintiff's arrest.  For the reasons that follow, the Court finds that the entry of summary judgment is appropriate in this case.  Defendants also seek leave to file an application for an award of attorney's fees and costs.  That request will be granted.

## II.   BACKGROUND

Plaintiff filed a complaint on December 8, 2009 seeking release from prison and damages from the Northfield Police Department and Defendant Buccafurni.  The complaint was screened sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, which requires the Court to review complaints filed by prisoners seeking redress from a government defendant in a civil action. In an Opinion dated July 14, 2010, the Court found that Plaintiff's complaint and the documents submitted therewith set forth a claim pursuant to 42 U.S.C. § 1983 for false arrest in

2

violation of the Fourth Amendment.  (Op. 9, July 14, 2010.)[1]  The Court ordered that the Northfield Police Department be terminated as a defendant and replaced with Defendant City of Northfield. (Order 1, July 14, 2010.)  Plaintiff's request for release from confinement was dismissed, and Plaintiff's claim seeking damages was permitted to proceed.  (Id. at 2.)

The following facts are not in dispute.  On June 15, 2009, Defendant Buccafurni was contacted by Joe Bunting of Bunting Family Pharmacy.  (Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. 4 (Investigator's Narrative of Detective Michael D. Buccafurni).) Mr. Bunting reported that on May 1, 2009, a man presented a prescription in the name of "Willie Williams" for 90 Roxicodone, a Schedule II narcotic.  (Id.)  The prescription, a copy of which

---

1.  Plaintiff contends in the complaint that he was not read his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), but the Court does not construe his complaint as asserting a claim with respect to the Miranda warning.  An officer's failure to read Miranda warnings to an arrestee cannot be grounds for a Section 1983 action.  Chavez v. Martinez, 538 U.S. 760, 772, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003).  However, relief may be available pursuant to Section 1983 if the statement obtained without a Miranda warning is used at trial.  See Renda v. King, 347 F.3d 550, 557-58 (3d Cir. 2003) (questioning plaintiff in custody without providing Miranda warnings is not basis for § 1983 claim as long as plaintiff's statements are not used against him at trial).  To the extent Plaintiff attempted to assert a claim concerning his Miranda rights, such claim fails because Plaintiff does not allege that a statement obtained after he was in custody without a Miranda warning was used against him at trial.  Moreover, Defendants have provided a transcript of the questioning on August 11, 2009 –– the date of Plaintiff's arrest –– in which it is clear that Plaintiff was read his Miranda rights.  (Def.'s Mot., Ex. 12 (T. of Interview) at 2:5-16.)

was provided to Defendant Buccafurni, was from Savithri
Bhamidipati, M.D., Family Medicine, Trump Taj Mahal, Atlantic
City, New Jersey.  (Id.)  Mr. Bunting reported that the doctor no
longer practiced in the area.  (Id.)  Defendant Buccafurni then
conducted a records search and located an individual named
"Willie Williams" who was also known as "Willie Sabb."  (Id.)
Thereafter, Defendant Buccafurni showed Mr. Bunting a picture of
Mr. Williams, and Mr. Bunting advised that the person in the
picture was the person who had come into the pharmacy.  (Id.)

On August 11, 2009, the Northfield Police Department was
notified that Plaintiff was on his way to Bunting Family
Pharmacy.  (Def.'s Mot., Ex. 8 (Internal Affairs Investigation
Report).)  Members of the Northfield Police Department were
dispatched to the area of Bunting Family Pharmacy and Plaintiff
was observed in a vehicle that was driving in the area.  (Id.)
The vehicle was stopped and Plaintiff was arrested.  (Id.)
Plaintiff was searched by Detective William Ward of the
Northfield Police Department.  (Def.'s Mot., Ex. 26
(Investigator's Narrative of Detective William Ward).)  Plaintiff
was found to be in possession of a Lidoderm patch and an Ambien
pill, for which he did not have prescriptions, and a crack pipe
containing "residue."  (Id.)  Detective Ward then contacted Donna

Clark, Administrator of the Northfield Municipal Court,[2] in
connection with Plaintiff's possession of the crack pipe, the
Ambien pill and the Lidoderm patch.  (<u>Id.</u>)  Complaint-Warrant
Numbers 2009-000227 and 2009-000228 were prepared with respect to
the additional charges.[3]  (<u>Id.</u>)

     The parties dispute the events that occurred subsequent to
Defendant Buccafurni's meeting with Mr. Bunting on June 15, 2009
and prior to Plaintiff's arrest on August 11, 2009.  Defendants
contend that after Defendant Buccafurni met with Mr. Bunting, he
contacted Ms. Clark, the administrator of the Northfield
Municipal Court, on the same day, June 15, 2009, to obtain an
arrest warrant.  (Def.'s Mot., Ex. 4 (Investigator's Narrative);
<u>see</u> <u>also</u> Def.'s Mot., Ex. 5 (T. of Dep. of Donna Clark) at 11:2-
15.)  Ms. Clark testified at her deposition that she found
probable cause for the arrest of Plaintiff.  (Def.'s Mot., Ex. 5
(T. of Clark Dep.) at 11:24-12:1.)  Ms. Clark further testified
that on June 15, 2009 she signed Complaint-Warrant Number 2009-
000168 for Plaintiff's arrest.  (<u>Id.</u> at 16:1-10.)  A "Wanted TRAK

---

2.  Under New Jersey law, an administrator of a municipal court,
"authorized by a judge of that court, may exercise the power of
the municipal court . . . to issue warrants and summonses."
N.J.S.A. § 2B:12-21(a).

3.  Under the New Jersey Rules of Court, an arrest warrant must
be "made on a Complaint-Warrant (CDR2) form" which must "contain
the defendant's name or if that is unknown, any name or
description that identifies the defendant with reasonable
certainty . . . [.]"  N.J. Ct. R. 3:2-3(a).

Flyer" was thereafter sent to all surrounding jurisdictions. (Def.'s Mot., Ex. 4 (Investigator's Narrative).)

Plaintiff was arrested approximately two months later, on August 11, 2009, at which time he purportedly was served with a warrant for "Willie Sabb" under Complaint-Warrant Number 2009-000168.  (See Ltr. from Pl. [Doc. No. 1-3] 3, Nov. 23, 2009.) The document that Plaintiff received was not signed by a judicial officer with a finding of probable cause.  Defendants explain that when Complaint-Warrant Number 2009-000168 was typed on June 15, 2009, Plaintiff's name was mistakenly misspelled as "S-A-A-B" rather than "S-A-B-B."  (Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") 6.)  Ms. Clark testified at her deposition that when Plaintiff was arrested on August 11, 2009, Ms. Clark was advised of the typographical error and a new Complaint-Warrant form bearing the same number, 2009-000168, was prepared.  (Def.'s Mot., Ex. 5 (T. of Clark Dep.) at 13:12-24.)  Ms. Clark stated that she did not need to find probable cause at that time because on June 15, 2009 she had found probable cause for the arrest. (Id. at 14:11-13.)

Plaintiff disputes Defendants' theory, arguing instead that Defendants fabricated a story concerning a typographical error to cover the fact that they did not have a signed warrant at the time of the arrest.  (Br. in Supp. of Mot. in Opp. to Mot. for Summ. J. ("Pl.'s Opp. Br.") 5.)  Plaintiff posits that Defendant

Buccafurni did not meet with Ms. Clark on June 15, 2009 and did not obtain a signed warrant prior to Plaintiff's arrest.  (Id.)

Plaintiff ultimately pled guilty to the charges contained in Complaint-Warrant Number 2009-000168 and was fined for possession of drug paraphernalia in connection with Complaint-Warrant Number 2009-000228.  (Def.'s Mot., Ex. 3 (T. of Dep. of Plaintiff) at 13:12-21; Ex. 5 (T. of Clark Dep.) at 24:13-18.)  The charges set forth in Complaint-Warrant Number 2009-000227 were dismissed. (Def.'s Mot., Ex. 5 (T. of Clark Dep.) at 24:19-21.)

## II.  DISCUSSION

### A.  Jurisdiction

Because Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for an alleged violation of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

### B.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)(quoting Fed. R. Civ. P. 56(c)).

An issue is "genuine" if it is supported by evidence "such that a reasonable jury could return a verdict for the nonmoving

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106
S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if,
under the governing substantive law, a dispute about the fact
might affect the outcome of the suit.  Id.  "In considering a
motion for summary judgment, a district court may not make
credibility determinations or engage in any weighing of the
evidence; instead, the non-moving party's evidence 'is to be
believed and all justifiable inferences are to be drawn in his
favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d
Cir. 2004) (quoting Anderson, 477 U.S. at 255, 106 S. Ct. 2505).

    Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex, 477 at
323, 106 S. Ct. 2548.  Once the moving party has met this burden,
the nonmoving party must identify, by affidavits or otherwise,
specific facts showing that there is a genuine issue for trial.
Id. at 324, 106 S. Ct. 2548.  Thus, to withstand a properly
supported motion for summary judgment, the nonmoving party must
identify specific facts and affirmative evidence that contradict
those offered by the moving party.  Anderson, 477 U.S. at 256-57,
106 S. Ct. 2505.  A party opposing summary judgment must do more
than just rest upon mere allegations, general denials, or vague
statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.
2001).

    The Local Civil Rules for the District of New Jersey require

a party moving for summary judgment to file a "statement which
sets forth material facts as to which there does not exist a
genuine issue, in separately numbered paragraphs citing to the
affidavits and other documents submitted in support of the
motion." L. Civ. R. 56.1(a).  The party opposing summary
judgment must then provide "a responsive statement of material
facts, addressing each paragraph of the movant's statement,
indicating agreement or disagreement and, if not agreed, stating
each material fact in dispute and citing to the affidavits and
other documents submitted in connection with the motion[.]"  Id.
"[A]ny material fact not disputed shall be deemed undisputed for
purposes of the summary judgment motion[.]"  Id.  The party
opposing summary judgment may also provide a "supplemental
statement of disputed material facts, in separately numbered
paragraphs citing to the affidavits and other documents submitted
in connection with the motion, if necessary to substantiate the
factual basis for opposition."  Id.

    Plaintiff does not specifically respond to each paragraph
contained in Defendants' "Statement of Facts," but he has
provided several documents and a brief explaining why such
documents demonstrate that summary judgment should not be
entered.[4]  The Court will thus determine whether the documents of

---

4.  Although the Court grants Plaintiff leniency given his pro se
status, the Court notes that Plaintiff was previously advised of
the applicability of Local Civil Rule 56.1(a) to summary judgment

record, as submitted by the parties, set out facts sufficient to find that there is no genuine issue as to any material fact and that Defendants are entitled to a judgment as a matter of law.

**C.   Analysis**

As noted in the July 14, 2010 Opinion, the Court construes the complaint as asserting a claim for false arrest under the Fourth Amendment and 42 U.S.C. § 1983.  The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  An individual harmed by a violation of the Fourth Amendment may bring an action under 42 U.S.C. § 1983, a statute enacted as part of the Civil Rights Act of 1871.

**1.   Plaintiff's Claim Against Defendant City of Northfield**

The Court first addresses Plaintiff's claim against Defendant City of Northfield, which must be dismissed. Such claim fails because Plaintiff has neither alleged nor provided any evidence that the City of Northfield violated his constitutional

---

motions.  <u>Williams v. Atlantic City Dept. of Police</u>, No. Civ. A. 08-4900, 2010 WL 2265215, at *2 (D.N.J. June 2, 2010).

rights.

Local governing bodies can be sued directly under Section 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Therefore, liability under Section 1983 may be imposed on municipalities only where acts of the government employee are deemed to be the result of a policy or custom of the municipality for which the employee works.  See id. at 691, 98 S. Ct. 2018; Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

Furthermore, a municipality is liable under Section 1983 only where execution of a government's policy or custom inflicts injury on the plaintiff.  Monell, 436 U.S. at 694, 98 S. Ct. 2018.  "[A] plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Proof of the mere existence of an unlawful policy or custom is not sufficient to maintain a Section 1983 action.  Id.

Here, Plaintiff fails to present any evidence that would

11

permit a reasonable jury to conclude that the City of Northfield implemented a policy or custom that caused its police officer to violate Plaintiff's constitutional rights.  Nor has Plaintiff alleged, let alone provided evidence to prove, that a policy or custom of the municipality was the proximate cause of a civil rights violation.  Accordingly, the City of Northfield is entitled to summary judgment in its favor.

### 2.   Plaintiff's Claim Against Defendant Buccafurni

Turning to Plaintiff's Fourth Amendment claim against Defendant Buccafurni, the Court finds that Plaintiff fails to meet his burden to defeat summary judgment.

### a.   There is No Genuine Issue as to Any Material Fact

The factual dispute at issue is whether a valid arrest warrant attesting to probable cause existed at the time of Plaintiff's arrest.  Plaintiff's supposition that Complaint-Warrant Number 2009-000168 did not exist at the time of his arrest is not supported by the evidence of record.  Rather, the evidence shows that there was an outstanding arrest warrant, Complaint-Warrant Number 2009-000168, signed on June 15, 2009 by the administrator of the Northfield Municipal Court.

In particular, the Court first notes that there is direct evidence that Complaint-Warrant Number 2009-000168 for the arrest of "Willie J Saab" was signed on June 15, 2009.  The warrant,

Bates Numbered Northfield 00035, is signed by Ms. Clark and is dated June 15, 2009.  (Def.'s Mot., Ex. 6.)  Next to Ms. Clark's name is a checked box indicating that "[p]robable cause IS found for the issuance of this complaint."  (Id.)

While Plaintiff does not dispute the existence of such document, he contends that it was not created until he was indicted.  The circumstantial evidence, however, demonstrates that Complaint-Warrant Number 2009-000168 was prepared on June 15, 2009.  Specifically, the Court notes Defendant Buccafurni's investigator's report, in which he states that on June 15, 2009, he "contacted Court Administrator Donna Clark and briefed her on the case."  (Def.'s Mot., Ex. 4 (Investigator's Narrative).)  The report further states that Ms. Clark found probable cause to issue a warrant for Plaintiff and that Defendant Buccafurni then completed Complaint-Warrant Number 2009-000168.  (Id.)

Ms. Clark's sworn deposition testimony is consistent with Defendant Buccafurni's report.  Ms. Clark explained that Defendant Buccafurni came to her concerning the charges against Plaintiff for uttering a false prescription and that she found probable cause for his arrest.  (Def.'s Mot., Ex. 5 (T. of Clark Dep.) at 10:14-21, 11:2-15, 11:24-12:2.)  Ms. Clark stated that she signed the complaint on June 15, 2009.  (Id. at 16:7-8.)  Ms. Clark further testified that when Plaintiff was arrested on August 11, 2009, she was advised that Plaintiff's name had been

13

misspelled on the original warrant.  (Id. at 13:17-24.)  Ms.
Clark testified that the spelling of Plaintiff's name was then
corrected on a new warrant.  (Id. at 14:5-14.)  She also
testified that she did not need on August 11, 2009 to find
probable cause in connection with Complaint-Warrant Number 2009-
000168 because she had "already previously found probable cause"
and there was no need for a separate finding of probable cause.
(Id. at 14:11-14; 14:23-15:3.)  This testimony substantiates
Defendants' assertion that Detective Buccafurni obtained a signed
version of Complaint-Warrant Number 2009-000168 on June 15, 2009
for the arrest of "Willie J Saab."

     Ms. Clark also testified as to a printout from the Automated
Complaint System setting forth the history of Complaint-Warrant
Number 2009-000168.[5]  (Id. at 16:1-20.)  According to Ms. Clark,
the document demonstrates that Defendant Buccafurni entered the
complaint through an "ECDR" database on June 15, 2009, that Ms.
Clark signed the complaint on June 15, 2009, and that on August
11, 2009 the spelling of Plaintiff's name was changed from "S-A-
A-B" to "S-A-B-B."  (Id.)  The document itself indicates that an
"ECDR" complaint was entered on June 15, 2009 at 12:33 p.m., and
was signed by "JUDMC5"[6] at 1:01 p.m. on June 15, 2009.  (Def.'s

---

5.  The document, Bates numbered Northfield 00071, is attached to
Defendants' motion at Exhibit 13.

6.  Ms. Clark testified that she is assigned a user ID of
"JUDMC5."  (Def.'s Mot., Ex. 5 (T. of Clark Dep.) at 16:8.)

14

Mot., Ex. 13 (Automated Complaint System printout).)  The
document also demonstrates that "JUDMC5" changed the defendant's
name at 12:38 p.m. on August 11, 2009.  (Id.)  The description of
the change says "Willie J Saab," and the name of the defendant in
the database is now spelled "Willie J Sabb."  (Id.)[7]

Furthermore, Plaintiff does not dispute that a flyer was
issued on or about June 17, 2009 -- two days after the arrest
warrant was issued -- requesting information about Plaintiff.
(Def.'s Mot., Ex. 9 (Wanted "TRAK" flyer).)  The flyer says that
"[a]n Arrest Warrant was issued for the above subject on
6/15/2009 for Forgery, Uttering, and Possession of CDS" and that
"Subject has been passing scripts from a stolen prescription pad
at the Bunting Family Pharmacy."  (Id.)  This document supports
Defendants' assertion that Complaint-Warrant Number 2009-000168
was issued prior to Plaintiff's arrest.

In opposition to the motion for summary judgment, Plaintiff
provides several documents that purportedly support his theory
that the warrant was signed subsequent to his arrest as part of a

---

7.  Another automated report attached to Plaintiff's opposition
papers also demonstrates that Complaint-Warrant Number 2009-
000168 had been issued on June 15, 2009.  Specifically, the
"Complaint Disposition Report," Bates Numbered Northfield 00024
and Northfield 00025, contains a case number for "Willie J Saab"
and sets forth Complaint-Warrant Number 2009-000168 and a
corresponding date of June 15, 2009, and a separate entry and
case number for "Willie J Sabb" with Complaint-Warrant Numbers
2009-000227 and 2009-000228 with corresponding dates of August
11, 2009.  This document is consistent with the testimony of Ms.
Clark and the reports of Defendant Buccafurni and Detective Ward.

conspiracy to cover up the fact that he was arrested without a signed warrant.  The Court finds that none of these documents create a genuine issue of fact as to whether the court administrator signed the warrant and found probable cause prior to Plaintiff's arrest.

Plaintiff first provides a copy of Complaint-Warrant Number 2009-000168, with his name spelled correctly, which was signed by Defendant Buccafurni but not Ms. Clark.  The existence of this document does not refute Defendants' contention that a separate Complaint-Warrant Number 2009-000168, with Plaintiff's name spelled incorrectly, was issued and signed by Ms. Clark on June 15, 2009.

Plaintiff also provides a letter dated November 23, 2009 that he sent to Ms. Clark requesting a copy of Complaint-Warrant Number 2009-000168.  Plaintiff's letter specifically requested that "a copy be sent to me on the above complaint/warrant that the Court has on file."  Plaintiff represents that in response to this letter, he received a version of the warrant that had the proper spelling of his name as well as Ms. Clark's signature, but there was no indication of the date on which Ms. Clark signed the document.  (Pl.'s Opp. Br. 3.)  Ms. Clark did not send a copy of the Complaint-Warrant that was purportedly signed on June 15, 2009 –- the version on which Plaintiff's name was misspelled as "S-A-A-B" –- and Plaintiff interprets Ms. Clark's failure to

produce this document as evidence that such document did not
exist at the time Ms. Clark responded to Plaintiff's letter.
(Id.)  Plaintiff does not submit any discovery obtained from Ms.
Clark explaining why she did not send both versions of the
warrant to Plaintiff, and his supposition that the June 15, 2009
warrant did not exist is contradicted by the warrant itself, Ms.
Clark's deposition testimony, Defendant Buccafurni's report, and
the printout from the Automated Complaint System as described
above.

Plaintiff also cites to a comment in Detective Ward's
investigative report in which Detective Ward states that Ms.
Clark authorized issuance of the warrant *after* Plaintiff was
arrested.  (Id.)  However, Defendants explain that Detective Ward
contacted Ms. Clark concerning the *new* charges related to
Plaintiff's possession of drug paraphernalia and prescription
medication at the time he was arrested.  (Reply Br. in Supp. of
Def's Mot. for Summ. J. 9.)  This communication resulted in the
issuance of Complaint-Warrant Numbers 2009-000227 and 2009-000228
(id.), and had no bearing on the fact that Complaint-Warrant
Number 2009-000168 had previously been issued on June 15, 2009.
Detective Ward's report clearly states that after Ms. Clark
authorized the warrant on August 11, 2009, Detective Ward
subsequently contacted a municipal court judge and advised that
he "had Williams in custody *on an outstanding warrant* from Det.

17

Buccafurni and that [Detective Ward] was typing additional charges on Williams."  (Def.'s Mot., Ex. 26 (Investigator's Narrative))(emphasis supplied).  This document therefore supports Defendants' contention that an arrest warrant had been issued prior to Plaintiff's arrest.

Plaintiff also cites to a number of documents that contain the proper spelling of his name, presumably to demonstrate that Defendants knew how to spell his name and could not have misspelled the name on the arrest warrant.  (Pl.'s Opp. Br. 2-6.)[8]  The existence of other documents with the correct spelling of Plaintiff's name does not demonstrate the non-existence of a signed arrest warrant at the time Plaintiff was arrested.  Rather, these documents all provide further support for Defendants' theory that the original warrant contained a minor typographical error.

Also attached to Plaintiff's opposition is an "Internal Affairs Investigation" report prepared by Lt. Daniel T. Mitchell, Jr. on March 17, 2010 concerning Plaintiff's allegation that he was arrested without a signed warrant.  Plaintiff contends that this report demonstrates that Defendant Buccafurni signed a

---

8.  These documents include, <u>inter</u> <u>alia</u>, Defendant Buccafurni's investigator's narrative, Atlantic County Jail Commitment forms, the "TRAK" flyer, the Automated Complaint System printout, a document titled "Criminal Division – Bail Order – Set/Reduce," and an Order of the Northfield Municipal Court in connection with Complaint-Warrant Number 2009-000227.

warrant on June 15, 2009 for "Willie J Sabb" and thereby refutes Defendants' contention that the warrant obtained on June 15, 2009 was in the name of "Willie J Saab."  (See Pl.'s Opp. Br. 2.) Defendants argue that the details in the report are wrong with respect to immaterial details and that the report should not be considered as accurate with respect to the spelling of Plaintiff's name.  (Reply Br. in Supp. of Def's Mot. for Summ. J. 7.)  The Court agrees that the report does not create an issue of fact with respect to whether the warrant obtained on June 15, 2009 contained the proper or improper spelling of Plaintiff's name.  The report is inconsistent with other facts of record, such as the date on which the Northfield Police Department was contacted by Mr. Bunting about Plaintiff[9] and the date on which the municipal court judge found probable cause for the arrest.[10] Moreover, Plaintiff's name is spelled incorrectly in various other places in the report and cannot be relied upon to demonstrate that Lt. Mitchell prepared the report with precise

---

9.  The report indicates that Mr. Bunting contacted the police on May 1, 2009.  (Def.'s Mot., Ex. 8 (Internal Affairs Investigation Report).)  Defendant Buccafurni's narrative indicates that Mr. Bunting contacted the police on June 15, 2009 about an incident that occurred on May 1, 2009.  (Def.'s Mot., Ex. 4 (Investigator's Narrative).)

10.  The report indicates that the municipal court judge found probable cause on June 15, 2009.  (Def.'s Mot., Ex. 8 (Internal Affairs Investigation Report).)  The warrant indicates that the municipal court judge signed the document on August 11, 2009, the date on which Plaintiff was arrested.  (Def.'s Mot., Ex. 14 (Warrant).)

attention to detail concerning the proper spelling of Plaintiff's name.  (See generally Def.'s Mot., Ex. 8 (Internal Affairs Investigation Report).)  As such, the Court does not consider the report as evidence that a warrant for "Willie J Saab" was not issued on June 15, 2009.

Plaintiff further submits a letter dated September 10, 2009 from the Atlantic County Prosecutor's Office to the Northfield Municipal Court, Bates Numbered Northfield 00095.  The caption of the letter references Warrant Numbers 2009-000227 and 2009-000228, which were the two complaints issued for Plaintiff's possession of a crack pipe with residue and prescription medications.  The letter states that the matter was remanded to the municipal court on August 18, 2009, and requests that the matter be referred again to the Prosecutor's Office to be reviewed.  Plaintiff infers from this letter that the Prosecutor's Office had remanded the case to cure a defect in the warrant and was requesting that it be sent back to the Prosecutor's Office for presentation to the grand jury.  (Pl.'s Opp. Br. 4-5.)  The document, however, does not refer to the warrant at issue in this case, that is, Complaint-Warrant Number 2009—000168, and in any event contains no indication that the case was remanded because Complaint-Warrant Number 2009-000168 contained errors that needed to be corrected.

Finally, Plaintiff submits a "Detail Call for Service

Report", Bates Numbered Northfield 00007, for August 11, 2009,
the date of Plaintiff's arrest, as well as copies of two
warrants, Bates Numbered Northfield 00056 and Northfield 00057.
Plaintiff does not explain the significance of these documents,
but it appears that he submits them to again demonstrate the
absence of a signed arrest warrant from June 15, 2009.  The Court
notes that the "Detail Call for Service Report" states that
"Willie J Williams [was] taken into custody for 2 ATS warrants."
Plaintiff then provides two warrants, which the Court presumes
are the two "ATS warrants" referred to in the report.  Plaintiff
appears to contend that if Complaint-Warrant Number 2009-000168
had existed at the time of the arrest on August 11, 2009, it
would have appeared on the "Detail Call for Service Report."
However, there are other possible reasons that Complaint-Warrant
Number 2009-000168 was not reflected on the report.  Perhaps only
Plaintiff's alias, "Willie J Williams" was searched, and a
warrant for "Willie J Saab" would not have come up in the search,
or perhaps the search was not exhaustive.  Plaintiff provides no
facts to demonstrate or even reasonably infer that the reason
Complaint-Warrant Number 2009-000168 is not reflected on the
"Detail Call Service Report" is that the warrant had not been
issued at the time of Plaintiff's arrest.

     The Court concludes that in light of the evidence of record
described above, including the warrant dated June 15, 2009,

Defendant Buccafurni's report, Detective Ward's report, Ms.
Clark's deposition testimony, and the printout from the Automated
Complaint System, that no reasonable juror, viewing all facts in
Plaintiff's favor, would accept Plaintiff's theory that a signed
warrant did not exist at the time of his arrest on August 11,
2009.  Rather, the undisputed facts demonstrate that Defendant
Buccafurni obtained an arrest warrant for "Willie J Saab," signed
by Ms. Clark with a finding of probable cause, prior to
Plaintiff's arrest.

> **b.    Defendant Buccafurni is Entitled to
>         Judgment as a Matter of Law**

Having found that there is no legitimate dispute that an
arrest warrant had been issued prior to Plaintiff's arrest,
albeit with Plaintiff's name misspelled, the Court must next
determine whether Defendant Buccafurni is entitled to have
summary judgment entered in his favor on Plaintiff's false arrest
claim.

The Court notes that Plaintiff pled guilty to the charge set
forth in Complaint-Warrant Number 2009-000168.  As such,
Plaintiff's ability to state a viable constitutional challenge to
events giving rise to his arrest is limited.  In Heck v.
Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383
(1994), the Supreme Court ruled that a constitutional cause of
action for damages does not accrue "for [an] allegedly
unconstitutional conviction or imprisonment, or for other harm

caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87, 114 S. Ct. 2364. A plaintiff is precluded from bringing a claim under 42 U.S.C. § 1983 if it would "impugn[] the validity of the plaintiff's underlying conviction unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 209 (3d Cir. 2005).

The only claim asserted in this case is that Plaintiff was unlawfully arrested. The success of a false arrest claim may not necessarily invalidate a conviction and such a claim may not necessarily be subject to a Heck bar. As the Third Circuit has noted, "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest" and a claim of unlawful arrest does not necessarily implicate the validity of a criminal prosecution subsequent to the arrest. Montgomery v. De Simone, 159 F.3d 120, 126 n.5 (3d Cir. 1998).

Defendants argue that Plaintiff's false arrest claim is barred under Heck because a finding in Plaintiff's favor on this claim would necessarily imply the invalidity of Plaintiff's conviction for the offenses set forth in Complaint-Warrant Number

2009-000168.  (Def.'s Br. 13.)  In connection with this argument,
Defendants acknowledge that a false arrest claim may not always
be Heck-barred "because there may be situations where probable
[cause] for the original arrest was lacking, but subsequent
evidence comes to light to convict beyond a reasonable doubt."
(Id.) (citing Burke v. Twp. of Cheltenham, 742 F. Supp. 2d 660
(E.D. Pa. 2010).)  Defendants assert that in this case
Plaintiff's guilty plea was based on the same evidence available
to Defendant Buccafurni and the court administrator at the time
the warrant was issued.  (Id.)  Defendants, however, provide no
evidence to substantiate this assertion.  Defendants rely only on
Plaintiff's admission that he pled guilty to the charges set
forth in Complaint-Warrant Number 2009-000168, but they do not,
for example, attach a transcript of the plea colloquy or any
other document for the Court to compare the evidence available at
the time Plaintiff's plea was taken with the evidence available
to Defendant Buccafurni at the time a warrant was obtained.
Accordingly, Defendants fail to demonstrate that the plea was
based on the same evidence available at the time of the initial
arrest.  Therefore, the Court at this time does not conclude that
the false arrest claim is barred under Heck.

     Even though the false arrest claim survives the Heck bar,
the claim is without merit and fails as a matter of law.  The
Fourth Amendment expressly imposes two requirements.  The first

clause in the Fourth Amendment requires that all searches and seizures are reasonable.  <u>Payton v. New York</u>, 445 U.S. 573, 584, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).  The second clause requires that a warrant be particular and supported by probable cause.  <u>Id.</u>

Plaintiff's claim in this case is based on the allegation that no warrant for his arrest had been issued prior to the time of his arrest, because the warrant presented to Plaintiff at the time of his arrest was not signed and did not indicate that there had been a finding of probable cause.  Although the Court has determined that no reasonable juror could conclude that a warrant had not been signed prior to Plaintiff's arrest, this conclusion does not end the inquiry because the warrant contained a typographical error.  The issue the Court must thus resolve is whether the warrant was invalid because Plaintiff's name was misspelled.

The Warrant Clause of the Fourth Amendment requires particularity in describing the person or things to be seized. Rule 4(b) of the Federal Rules of Criminal Procedure codifies the particularity requirement of the Warrant Clause, providing that an arrest warrant must, <u>inter alia</u>, "contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty[.]"  <u>Fed. R. Crim. P.</u> 4(b).  "An arrest warrant that correctly names the

person to be arrested generally satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant." <u>Powe v. City of Chicago</u>, 664 F.2d 639, 645 (7th Cir. 1981).  However, "an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the fourth amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him."  <u>Id.</u>

The Third Circuit has noted that "[a] mere technical error does not automatically invalidate" an arrest warrant.  <u>United States v. Carter</u>, 756 F.2d 310, 313 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 478 U.S. 1009, 106 S. Ct. 3307, 92 L. Ed. 2d 721 (1986).  "'The true inquiry . . . is . . . whether there has been such a variance as to 'affect the substantial rights' of the accused.'" <u>Id.</u> (quotation omitted).

The Court finds <u>Kis v. County of Schuylkill</u>, 866 F. Supp. 1462 (E.D. Pa. 1994), instructive in deciding whether the misspelling of Plaintiff's name on the arrest warrant renders the warrant invalid.  In <u>Kis</u>, the plaintiff brought a false arrest claim on the basis that the arrest warrant was invalid because the plaintiff's name was spelled incorrectly.  <u>Id.</u> at 1469.  The plaintiff, Oleg Kis, was arrested pursuant to a warrant issued for "Oley Kiss."  <u>Id.</u> at 1470.  The court noted that the

26

uniqueness of the name and the listing of the plaintiff's correct
address on the warrant placed the defendant officers on notice
that the warrant was intended for the plaintiff and no one other
than the plaintiff.  Id.  One of the defendant officers also was
able to identify the plaintiff as the person they intended to
arrest.  Id.  The court granted the defendant officers' motion
for summary judgment, finding that "the misspelling of
plaintiff's name has no bearing on the facial validity of the
arrest warrant."  Id. at 1471.

Similarly, here, the Court finds that the misspelling of
Plaintiff's last name on the arrest warrant as "S-A-A-B" instead
of "S-A-B-B" has no bearing on the facial validity of the
warrant.  The typographical error was minor, with only one letter
misspelled, and was not likely to confuse officers of the
identity of the person they were to arrest.  Moreover, the
warrant appears to set forth additional identifying information
including Plaintiff's last known address, date of birth, and
social security number,[11] and Plaintiff has not argued that any
of these identifiers are inaccurate.  Given all of this
information, the warrant -- despite the typographical error --
was sufficient to inform the officers that Plaintiff was the

_____

11.  Although these identifiers are redacted in the document
provided to the Court, it appears that these areas of the warrant
were completed and thus contained information identifying
Plaintiff.  (Def.'s Mot., Ex. 6 (Warrant).)

person intended to be seized.

Indeed, Plaintiff does not contend that he was not the person for whom the warrant was meant and he, in fact, pled guilty to the charges set forth in the arrest warrant. This was not a case in which the authorities did not know or were uncertain of the name of the arrestee, thus resulting in an arbitrary name used in the warrant, or a case in which the authorities identified the wrong person altogether. Rather, the police were certain of the name of the intended arrestee and his name was simply misspelled. The Court fails to see how the minor misspelling of Plaintiff's name had any effect on his substantive rights.[12] As such, the Court concludes that Complaint-Warrant Number 2009-000168 was valid notwithstanding the misspelling of Plaintiff's last name.

Having found that Plaintiff's arrest was made pursuant to a valid warrant, the issue is whether under the circumstances, Plaintiff's § 1983 claim against Defendant Buccafurni for false arrest can stand. The Third Circuit has instructed that "a

---

12. This conclusion is also supported by the New Jersey Rules of Court, which provide that a person arrested pursuant to a warrant containing a "technical insufficiency" or "irregularity" shall not be discharged from custody but rather the warrant may be amended to remedy any such technical defect. N.J. Ct. R. 3:3-4(a). Thus, under New Jersey law the remedy for a technical defect in an arrest warrant is not release of the person arrested, but rather amendment of the warrant, further demonstrating that a typographical error in an arrest warrant does not invalidate an arrest.

plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (citations omitted).  Plaintiff does not contend that Defendant Buccafurni made false statements or omissions to the court administrator when he applied for the warrant, and any claim in this regard thus fails.

Moreover, Plaintiff's claim for false arrest fails even assuming that a signed warrant did not exist at the time of the arrest.  "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003); United States v. Watson, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) ("[T]he judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause . . . [.]"); Watford v. Millville Police Dept., No. Civ. A. 09-6111, 2010 WL 3024869, at *6 (D.N.J. July 30, 2010) ("[A] warrantless

public arrest by a law enforcement officer is reasonable under
the Fourth Amendment 'where there is probable cause to believe
that a criminal offense has been or is being committed.'")
(quoting Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588,
160 L. Ed. 2d 537).

　　To establish the absence of probable cause, a plaintiff must
show "that at the time when the defendant put the proceedings in
motion the circumstances were such as not to warrant an
ordinarily prudent individual in believing that an offense had
been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975).
"Probable cause to arrest requires more than mere suspicion;
however, it does not require that the officer have evidence
sufficient to prove guilt beyond a reasonable doubt." Orsatti v.
N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  To
determine whether an officer had probable cause at the time of
the arrest, a court must consider whether at the time of the
arrest, the facts and circumstances within the officer's
knowledge were sufficient to warrant a prudent person in
believing that the individual arrested had committed an offense.
Id. at 483 (citations omitted).  Although typically reserved for
the jury's fact-finding function, the existence of probable cause
may be affirmed as a matter of law "if the evidence, viewed most
favorably to Plaintiff, reasonably would not support a contrary
factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d

Cir. 1997).

Viewing the evidence most favorably, the Court finds that probable cause existed to justify Plaintiff's arrest for forgery. Pursuant to N.J.S.A. § 2C:21-1(a), a person is guilty of the felony of forgery if, with purpose to defraud or injure, or with knowledge that he is facilitating a fraud or injury, he "[a]lters or changes any writing of another without his authorization" or "[m]akes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act[.]"  N.J.S.A. § 2C:21-1(a)(1), (2).

As discussed above, it is undisputed that on June 15, 2009, Mr. Bunting of Bunting Family Pharmacy reported to Defendant Buccafurni that a man presented a prescription in the name of "Willie Williams," which is Plaintiff's alias, for a Schedule II narcotic.  Mr. Bunting advised that the prescription was from a doctor who no longer practiced in the area.  Defendant Buccafurni then conducted a records search and located an individual named "Willie Williams" -- the name that was on the prescription -- who was also known as "Willie Sabb."  Defendant Buccafurni showed Mr. Bunting a picture of Willie Williams, and Mr. Bunting advised that the person in the picture was the same person who had come into the pharmacy.  These circumstances would warrant a prudent person in believing that Plaintiff had committed an offense of forging a prescription in violation of N.J.S.A. § 2C:21-1(a).

When the police thereafter observed Plaintiff riding in a car, with knowledge that there were outstanding charges for forgery, the police had probable cause to effect the arrest of Plaintiff. Thus, given the existence of probable cause that Plaintiff committed a felony, the police did not require a warrant.

In light of the valid warrant that was in existence when Plaintiff was arrested, Plaintiff's failure to raise any challenge to the manner in which Defendant Buccafurni obtained the warrant, and the Court's finding that Plaintiff's arrest on August 11, 2009 was reasonable and supported by probable cause, the Court concludes that Defendant Buccafurni is entitled to summary judgment on Plaintiff's Section 1983 claim for false arrest.

### c.   Qualified Immunity

Defendant Buccafurni asserts a qualified immunity defense as a separate ground for dismissal of Plaintiff's claims against him.  The Court agrees that Defendant Buccafurni is entitled to qualified immunity for the reasons that follow.

"'The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.''"  Montanez v. Thompson, 603 F.3d 243, 249–50 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808,

815, 172 L. Ed. 2d 565 (2009)).  "Qualified immunity balances two

important interests -- the need to hold public officials

accountable when they exercise power irresponsibly and the need

to shield officials from harassment, distraction, and liability

when they perform their duties reasonably."  Pearson, 555 U.S. at

231, 129 S. Ct. 808.  This doctrine provides a government

official immunity from suit rather than a mere defense to

liability.  Id.

A Court must undertake a two-step inquiry to determine the

applicability of qualified immunity:

> First, a court must decide whether the facts
> that a plaintiff has alleged or shown make
> out a violation of a constitutional right.
> Second, if the plaintiff has satisfied this
> first step, the court must decide whether the
> right at issue was clearly established at the
> time of a defendant's alleged misconduct.
> Qualified immunity is applicable unless the
> official's conduct violated a clearly
> established constitutional right.[13]

Montanez, 603 F.3d at 250 (quoting Pearson, 555 U.S. at 232, 129

S. Ct. 808).

"Where a defendant asserts a qualified immunity defense in a

motion for summary judgment, the plaintiff bears the initial

burden of showing that the defendant's conduct violated some

---

13.  Although the aforementioned sequence of the qualified
immunity analysis is often appropriate, it is not rigid and
inflexible; rather, a court may exercise its discretion in
deciding which of the two prongs should be addressed first in
light of a case's particular circumstances.  Montanez, 603 F.3d
at 250 (quoting Pearson, 555 U.S. at 236, 129 S. Ct. 808).

clearly established statutory or constitutional right."
Sherwood, 113 F.3d at 399.  "Only if the plaintiff carries this
initial burden must the defendant then demonstrate that no
genuine issue of material fact remains as to the 'objective
reasonableness' of the defendant's belief in the lawfulness of
his actions."  Id.

In determining whether a defendant is entitled to qualified
immunity, the court is "permitted to exercise [its] sound
discretion in deciding which of the two prongs of the qualified
immunity analysis should be addressed first in light of the
circumstances in the particular case at hand."  Pearson, 555 U.S.
at 236, 129 S. Ct. 808.  If the answer to either question is
"no," the analysis may end there.  See id. at 245, 129 S. Ct. 808
(finding that because the unlawfulness of the officers' conduct
was not clearly established, the officers were entitled to
qualified immunity, without having to answer the question of
whether the officers violated the Plaintiff's constitutional
rights).

Here, Plaintiff has failed to demonstrate that a violation
of his constitutional rights has occurred as set forth above, and
the Court need not proceed to the second prong to find that
Defendant Buccafurni is entitled to qualified immunity.

Even were the Court to consider the second prong, the Court
finds that a reasonable officer could have believed that there

34

was probable cause for the arrest of Plaintiff.  To state a false arrest claim under the Fourth Amendment and pursuant to Section 1983, the plaintiff must show that "the arresting officer lacked probable cause to make the arrest." Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001).  Given the totality of the circumstances presented to Defendant Buccafurni as described above, including Mr. Bunting's account of the events concerning a forged prescription and Mr. Bunting's identification of Plaintiff in a photograph, a reasonable officer could have concluded that there was probable cause to believe that Plaintiff may have passed a forged prescription.  As a result, Defendant Buccafurni is entitled to qualified immunity on Plaintiff's claim of a constitutional violation.

### 4.   Defendants' Request for Leave to File an Application for Attorney's Fees or Motion for Sanctions

Defendants request leave to file an application for attorney's fees under two theories: first, because the Court has granted summary judgment in their favor, they contend that they are a "prevailing party" entitled to a fee award under 42 U.S.C. § 1988(b), and second, because Plaintiff filed a frivolous suit, they are entitled to an award of fees under Fed. R. Civ. P. 11(c).  (Def.'s Br. 28.)  Defendants argue that Plaintiff's complaint was both legally and factually frivolous.  Defendants represent that they sent Plaintiff a letter demanding withdrawal

of the complaint, noting that a signed copy of Complaint-Warrant Number 2009-000168 was also sent to Plaintiff, yet Plaintiff continued to pursue this litigation.  (Id.)  Plaintiff did not respond to Defendants' request for leave to file a motion for fees.

42 U.S.C. § 1988(b) provides that the Court, in its discretion, may allow a prevailing party in an action brought under 42 U.S.C. § 1983 a "reasonable attorney's fee as part of the costs . . .[.]"  The Supreme Court has noted that "[t]he section states that the court 'in its discretion' may allow a fee, but that discretion is not without limit: the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  Blanchard v. Bergeron, 489 U.S. 87, 89 n.1, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).  As Defendants have prevailed in having all claims dismissed on summary judgment, they are prevailing parties and may seek an award of fees under Section 1988.

Rule 11 of the Federal Rules of Civil Procedure also permits an award of attorneys' fees under certain circumstances.  Rule 11(b) provides that by presenting a pleading, motion or other paper to the Court, a party is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing

36

law . . . [and] the factual contentions have evidentiary
support[.]" Fed. R. Civ. P. 11(b).  The Court may impose
sanctions for a party's failure to comply with Rule 11(b).  Fed.
R. Civ. P. 11(c).  A party seeking the imposition of sanctions
for another party's failure to comply with Rule 11 must serve a
motion for sanctions on the other party, but must not file the
motion with the Court if the challenged claim is withdrawn or
corrected within twenty-one days after service of the motion.
Id.  In this case, Defendants contend that Plaintiff's claims are
devoid of factual and legal support, yet Plaintiff continued the
prosecution of this case.  (Def.'s Mot., Ex. 25 (Letter to Pl.,
Oct. 14, 2010).)  Under these circumstances, Defendants are
permitted to file a motion under Rule 11.[14]

In granting Defendants leave to seek an award of attorneys'
fees under Section 1988 and/or Rule 11, the Court notes that
Defendants have requested only leave to file such motions.
Accordingly, the Court finds only that Defendants are entitled to
file their applications for fees and at this time does not
address on the merits whether an award of fees is appropriate

---

14.  The Court notes that although Defendants sent Plaintiff a
letter requesting that he withdraw his claims in this case,
Defendants do not assert that they served a Rule 11 motion on
Plaintiff as required by the court rules.  The Court's granting
of leave to file a motion under Rule 11 does not excuse
Defendants from the procedural requirements of Rule 11, which
include service of a copy of a motion for sanctions twenty-one
days prior to filing such motion with the Court.  Fed. R. Civ. P.
11(c)(2).

under the circumstances of this case.

**III. CONCLUSION**

This case is about a typographical error, and there is no evidence to support Plaintiff's theory that Defendants engaged in a conspiracy to cover up an arrest without a signed warrant. For the reasons expressed above, Defendants are entitled to summary judgment on Plaintiff's false arrest claim. Defendants are also entitled to file an application for an award of attorneys' fees and/or a motion for sanctions. An appropriate Order will be issued.


Dated: December 9, 2011                ___s/ Noel L. Hillman_____
                                       NOEL L. HILLMAN, U.S.D.J.
At: Camden, New Jersey

38